IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SALVATORE GIARDINA,

    **Plaintiff,**

    v.

MEGAN J. BRENNAN,

    **Defendant.**

Case No. 5:18-cv-04116-HLT-TJJ

## **MEMORANDUM AND ORDER**

Plaintiff Salvatore Giardina, a former United States Postal Service ("USPS") employee, brings this employment discrimination action pro se[1] against Defendant Megan Brennan in her official capacity as Postmaster General.[2] Doc. 1. Plaintiff asserts claims for (1) age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621, *et seq.*; and (2) failure to accommodate his disability pursuant to § 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791.[3] *Id.* Defendant now moves for dismissal of Plaintiff's age discrimination claim and for summary judgment on Plaintiff's failure-to-accommodate claim. Doc. 36.

---

[1]   Because Plaintiff proceeds pro se, the Court liberally construes his pleadings and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of advocate. *Id.*

[2]   Plaintiff originally also named two individual USPS employees—Emerson Daniels and Greg Gonzales—as defendants to this action, but they were previously dismissed. Doc. 35.

[3]   Although Plaintiff purports to bring a claim for disability discrimination under the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12101, *et seq.* (Doc. 1 at 1), this claim is properly brought under § 501 of the Rehabilitation Act because Plaintiff is a federal employee and alleges this claim against a federal agency. *See Corbin v. Runyon*, 1999 WL 590749, at *6 (10th Cir. 1999) ("As a federal Postal Service employee, § 501 of the Rehabilitation Act is the exclusive remedy for [plaintiff's] claim of disability discrimination."). Given his pro se status, the Court construes Plaintiff's disability discrimination claim as being filed under the Rehabilitation Act.

For the following reasons, the Court agrees with Defendant and finds that dismissal and summary judgment are warranted. With respect to Plaintiff's age discrimination claim, the Court finds that Plaintiff has failed to exhaust his administrative remedies and, accordingly, that claim must be dismissed under Rule 12(b)(6). And, as to Plaintiff's claim for failure to accommodate his disability, the Court finds Defendant is entitled to summary judgment because (1) neither Plaintiff nor USPS identified a vacant position Plaintiff could perform with his medical restrictions, and (2) Plaintiff cannot show he was qualified, with or without reasonable accommodation, to perform a vacant job within the USPS. The Court's holdings are explained in further detail below.

## I. BACKGROUND[4]

### A. Plaintiff's Response to Defendant's Statement of Facts

As an initial matter, the Court notes that on July 9, 2019—the same day she filed her motion to dismiss and for summary judgment—Defendant mailed Plaintiff a "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment" as required by District of Kansas Rule 56.1(f). Doc. 38. That notice advised Plaintiff that he may not oppose summary judgment by simply relying on the allegations in his complaint; rather, he must submit evidence to contradict the material facts asserted by Defendant. *Id.* at 1. The notice further cautioned that, if Plaintiff did not timely respond to Defendant's motion with such evidence, the Court "may accept [D]efendant's facts as true, in which event [Plaintiff's] case may be dismissed and judgment entered in [D]efendant's favor without a trial." *Id.* at 2.

Nonetheless, when Plaintiff filed his opposition to Defendant's motion for summary judgment, he did not include a response to Defendant's statement of uncontroverted facts as

---

[4] In reciting the facts relevant to Defendant's motion for summary judgment, the Court construes the facts in the light most favorable to Plaintiff as the non-moving party. In connection with those facts pertinent to Defendant's motion to dismiss (i.e., those facts associated with Plaintiff's EEO complaint), however, the Court accepts as true Plaintiff's well-pleaded factual allegations.

required by Rule 56 and District of Kansas Rule 56.1(b) (both of which were included with the Notice to Pro Se Litigant as required). *See* Doc. 43. And he cites no evidence to support his additional facts. Although recognizing that Plaintiff proceeds pro se, Plaintiff's pro se status neither excuses him from compliance with procedural rules nor shields him from the consequences of his noncompliance. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (noting the Tenth Circuit has "repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants"). This includes compliance with the District's local rules. *Hamilton v. Dep't of Veterans Affairs*, 2016 WL 7326280, at *1 (D. Kan. 2016).

Because Plaintiff has not properly controverted Defendant's facts or supported his additional facts, the Court deems Defendant's statement of facts admitted for purposes of summary judgment. *See* D. KAN. R. 56.1(a) ("All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."); FED. R. CIV. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."); *see also Kobel v. Dunkle*, 2018 WL 572053, at *2 (D. Kan. 2018) (deeming defendants' allegations admitted for purposes of summary judgment where pro se plaintiff "generally [did] not controvert defendants' statements in numbered paragraphs"); *Hamilton*, 2016 WL 7326280, at *2 (holding that "[b]ecause [pro se] plaintiff has controverted none of defendant's facts, the court can consider these facts undisputed for purposes of summary judgment").[5]

---

[5] Although the Court deems Defendant's facts admitted, the Court did review the record evidence cited by Defendant and has confirmed that it supports Defendant's asserted facts. The Court has also attempted to give Plaintiff's filings fair construction under the liberal pro se standard when analyzing the pending motion and Plaintiff's arguments.

### B. Plaintiff's Employment With USPS

Plaintiff began working as a mailhandler at a USPS facility in Topeka, Kansas, in January 1986. Doc. 37 at 2 ¶ 3. While working at USPS, Plaintiff injured both his right knee (in 1987) and left knee (in 1996). *Id.* at 2 ¶ 4. In March 1999, Plaintiff was diagnosed with joint bilateral knee osteoarthritis; the duration of his condition was indefinite. *Id.* USPS accepted Plaintiff's workers' compensation claim related to his knee injuries and gave him a modified duty assignment at its Topeka Processing and Distribution Facility working as a transporter, which required use of a tow machine (Plaintiff refers to this machine in his filings as a "mule"). *Id.*

#### 1. Computer Line Production Operator Position

In January 2013, USPS notified Plaintiff that, due to closure of the Topeka Processing and Distribution Facility, he would be involuntarily reassigned to a different facility and needed to choose a new work assignment. *Id.* at 3 ¶ 5; Doc. 37-4 at 8-9. Plaintiff picked the Computer Line Production Operator position at the National Print Center ("NPC") in Topeka. Doc. 37 at 3 ¶ 6; Doc. 37-4 at 8-9. The Computer Line Production Operator position required repeated and daily lifting, carrying, pushing, and climbing ladders. Doc. 37 at 3 ¶ 10. The NPC does not have tow machines. *Id.* at 3 ¶ 7.

On February 28, 2013, Plaintiff reported to work at the NPC and began training for his new position. *Id.* at 3 ¶ 8. But Plaintiff ultimately determined he could not perform the essential functions of the position. *Id.* at 3 ¶ 9. For example, Plaintiff had trouble climbing the ladder and rolling the paper spool to and from the machine. *Id.* at 3 ¶ 10. And the morning after his first day in the position, Plaintiff's legs were "so bad [he] could hardly walk." *Id.* at 3 ¶ 9. Plaintiff called his doctor but he was unavailable, so Sarah McKenna gave Plaintiff a week off. Doc. 37-4 at 12.

In early March 2013, Plaintiff notified Emerson Daniels (Plant Manager at the NPC), Cameron Sherve (Plaintiff's supervisor), and Greg Gonzales (another USPS supervisor) that he could not perform the essential functions of the Computer Line Production Operator position. Doc. 37 at 4 ¶ 13. Plaintiff contends that, during this meeting, Mr. Gonzales suggested a way of modifying the position to allow Plaintiff to alternate sitting and standing while performing the work. *Id.* at 4 ¶ 14.

2. **Interactive Process**

After the meeting with Plaintiff in early March 2013, Mr. Daniels asked Plaintiff for documentation to support his medical limitations. *Id.* at 4 ¶ 15. Plaintiff gave Mr. Daniels a copy of his medical restrictions dated December 2012, which stated he could perform "intermediate lifting of 10-20 lbs." *Id.* at 4 ¶ 16. The restrictions further stated that "[i]n [an] 8 hour day [Plaintiff] may sit 4 hours and stand 4 hours." *Id.* And Plaintiff "[m]ay work up to 11 hours per day with restriction of sitting and standing in place if pain allows." *Id.* But, on March 12, 2013, Plaintiff provided additional documentation from his physician stating that Plaintiff was currently under his medical care but "may return to work with no restrictions on 03/18/2013." *Id.* at 4-5 ¶ 17. After Mr. Daniels received this conflicting medical documentation, he contacted USPS's Injury Compensation to determine the nature of Plaintiff's limitations—however, no medical information was in Plaintiff's file. *Id.* at 5 ¶ 19. USPS officials subsequently scheduled at least two functional capacity evaluations to determine if Plaintiff could perform jobs at the NPC; however, Plaintiff failed to participate. *Id.* at 5 ¶¶ 20-21.

On August 19, 2013, Mr. Daniels sent Plaintiff a certified letter advising him that he had exhausted his sick, annual, and FMLA leave, and requesting medical documentation for his continued incapacitation. *Id.* at 5-6 ¶ 22. To determine if Plaintiff could physically perform the

5

Computer Line Operator position or the Packer Warehouseman position (another job at the NPC), Mr. Sherve sent the job requirements to Plaintiff's physician, Dr. Kenneth Teter. *Id.* at 6 ¶ 23. On August 27, 2013, Mr. Daniels received a letter from Dr. Teter stating he had reviewed the job descriptions and that Plaintiff, "because of his knee conditions, would not be able to perform these jobs." *Id.* at 6 ¶ 24. Dr. Teter further stated that "[t]he job descriptions exceed [Plaintiff's] capabilities" and "[t]his I know even without a functional capacity evaluation." *Id.* On September 3, 2013, Dr. Teter reiterated Plaintiff's medical restrictions as those identified in his December 2012 restrictions. *Id.* at 6-7 ¶ 26.

Once Mr. Daniels realized Plaintiff could not physically perform the essential duties of the Computer Line Production Operator position, Mr. Daniels conducted a search in the local commuting area for vacant USPS positions within Plaintiff's medical restrictions. *Id.* at 7 ¶ 27. During that search, Mr. Daniels contacted managers at seven different postal facilities, but each manager informed him that no vacant positions were available with duties that Plaintiff could perform within his restrictions. *Id.* at 7 ¶ 28.

Ultimately, in 2013 and 2014, Mr. Daniels could not find any available, vacant positions that Plaintiff could perform within his medical restrictions. *Id.* at 7 ¶ 29. Plaintiff likewise did not identify any available, vacant position with essential duties he could perform given his restrictions. *Id.* at 7 ¶ 30. On May 20, 2014, Mr. Daniels sent Plaintiff a letter advising him that, following his search, he was unable to locate any vacant funded positions available within Plaintiff's restrictions. *Id.* at 8 ¶ 31. In that letter, Mr. Daniels also gave Plaintiff the option to be assigned to any vacant funded position nationwide. *Id.* To conduct that search, Mr. Daniels informed Plaintiff he would need to submit an application through eCareer for open positions. *Id.* But Plaintiff never contacted Mr. Daniels to let him know he applied through eCareer. *Id.* at 8 ¶ 32. Plaintiff ultimately never

returned to the NPC after working on February 28, 2013, and retired from employment with USPS. *Id.* at 8 ¶ 33.

### C. Plaintiff's EEO Complaint

In or around late September 2013, Plaintiff submitted an equal employment opportunity ("EEO") complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Doc. 37-2. In the section of his EEO complaint indicating the bases of the alleged discrimination, Plaintiff initially checked the boxes for disability discrimination, age discrimination, and retaliation. *Id.* at 2. But the boxes corresponding with age discrimination and retaliation were subsequently crossed out, with the word "omit" and Plaintiff's initials ("SG") written next to them. *Id.* Submitted with the EEO complaint were six additional pages detailing the associated factual allegations. *Id.* at 3-8. Neither the EEO complaint itself nor these additional pages contain any allegations related to age discrimination or retaliation.

On February 26, 2016, the EEOC Administrative Judge assigned to Plaintiff's case issued a decision, finding that Plaintiff had not proved that USPS subjected him to discrimination as alleged in his EEO complaint. Doc. 1 at 14-15. After USPS issued a final order adopting that decision on March 14, 2016, Plaintiff filed an appeal with the EEOC. *Id.* at 11. On June 6, 2018, the EEOC issued a decision affirming USPS's final order implementing the administrative judge's decision and, therefore, denying Plaintiff's appeal. *Id.* at 17. But the EEOC's June 6, 2018 decision advised Plaintiff that he had the right to file a civil action in the District Court within 90 days from the date of his receipt of the decision. *Id.* at 18. Plaintiff accordingly filed this action against Defendant on September 5, 2018, asserting claims for: (1) age discrimination in violation of the ADEA, and (2) failure to accommodate his alleged disability in violation of the Rehabilitation Act. *Id.*

## II. ANLAYSIS

### A. ADEA Claim

The Court first addresses Plaintiff's claim for age discrimination under the ADEA. Defendant seeks to dismiss this claim under Rule 12(b)(6), arguing that Plaintiff failed to exhaust his administrative remedies before filing suit. Doc. 37 at 9-11; *see also Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018) (holding that a plaintiff's failure to exhaust his administrative remedies permits the employer to raise an affirmative defense of failure to exhaust). Specifically, Defendant argues an age discrimination claim was not included within the scope of Plaintiff's EEO complaint. Doc. 37 at 10-11.

#### 1. Motion to Dismiss Standard

The court will dismiss a cause of action pursuant to Rule 12(b)(6) under two circumstances. First, dismissal is warranted where an issue of law precludes recovery. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). Second, dismissal is likewise appropriate where the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if its factual allegations allow the court to draw the reasonable inference that the opposing party is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court must accept well-pleaded factual allegations as true, this obligation does not extend to legal conclusions or to "threadbare recitals of the elements of the cause of action." *Id.* at 678-79. Complaints drafted by pro se litigants, however, are held to a less stringent standard than those drafted by legal counsel and will only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts supporting the claim for relief. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nevertheless, it is not the proper function of the courts to assume the role of advocate for a pro se litigant. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

2.  **Analysis**

For the following reasons, the Court finds that dismissal of Plaintiff's age discrimination claim is warranted for failure to exhaust because that claim is outside the scope of his EEO complaint. Before filing suit under the ADEA, a plaintiff must first exhaust his administrative remedies by filing a charge with the EEOC. *Riley v. Tulsa Cty. Juvenile Bureau ex rel. Tulsa Cty. Bd. of Comm'rs*, 421 F. App'x 781, 783 (10th Cir. 2010). And a plaintiff's claim in federal court "is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (internal quotations omitted).

In the section of his EEO complaint indicating the bases of the alleged discrimination, Plaintiff initially checked the box for age discrimination. Doc. 37-2 at 2. But this box was subsequently crossed out, with the word "omit" and Plaintiff's initials ("SG") written next to it. *Id.* This created a presumption that Plaintiff was not asserting that claim. *See Jones*, 502 F.3d at 1186 (holding that the failure to mark a particular box on a charge "creates a presumption that the charging party is not asserting claims represented by that box"). This presumption may be rebutted, however, "if the text of the charge clearly sets forth the basis of the claim." *Id.* But, here, the EEO complaint only includes allegations of discrimination related to Plaintiff's disability—i.e., Plaintiff's allegations that USPS failed to accommodate his knee condition. Doc. 37-2 at 2. Submitted with the EEO complaint were six additional pages detailing the associated factual allegations. *Id.* at 3-8. These additional pages likewise contain no allegations related to age discrimination. *Id.*

The Court notes that EEOC charges generally are to be "liberally construed," given that they are often—as is the case here—prepared and filed by non-attorneys. *See Smith v. Cheyenne*

*Ret. Inv'rs L.P.*, 904 F.3d 1159, 1166 (10th Cir. 2018) ("Because EEOC Charges are traditionally filed by non-attorneys, we have repeatedly emphasized that the Charges should be 'liberally construe[d]' at all levels of their review."). But even liberally construing Plaintiff's EEO complaint, the Court does not find any allegations that could plausibly be construed as asserting discrimination on the basis of Plaintiff's age. Based on the contents of Plaintiff's EEO complaint (initially checking and then voluntarily omitting age discrimination) and the accompanying pages (not including allegations related to age discrimination), it would not be reasonable to expect the scope of the ensuing EEOC investigation to include an inquiry into age-based discrimination.[6]

For these reasons, the Court dismisses Plaintiff's ADEA claim for failure to exhaust his administrative remedies. Because Plaintiff did not raise his age discrimination claim at the administrative level, Plaintiff cannot now assert it here.[7] This dismissal is without prejudice to Plaintiff refiling his claims in the future should he be able to exhaust his administrative remedies and plead a timely complaint. *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be without prejudice."); *see also Cheyenne Ret. Inv'rs*, 904 F.3d at 1166.

### B.  Rehabilitation Act Claim

Plaintiff next alleges Defendant violated the Rehabilitation Act by failing to accommodate his disability—i.e., his joint bilateral knee osteoarthritis. Doc. 1. Plaintiff asserts Defendant accommodated other disabled employees but not him. *Id.* Defendant moves for summary judgment

---

[6] Indeed, the EEOC order on Plaintiff's administrative appeal, which Plaintiff attaches to his complaint, bolsters this conclusion. In it, Plaintiff's EEO complaint is framed as asserting disability discrimination only. *See* Doc. 1 at 11-18.

[7] Plaintiff's opposition did not meaningfully address this argument and included no facts or allegations suggesting that he had exhausted this claim.

on this claim, arguing Plaintiff cannot establish several elements of his prima facie case. Doc. 37 at 12-22.

   1.   **Summary Judgment Standard**

Summary judgment is appropriate where the moving party demonstrates that "there is no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In applying this standard, courts must view the facts and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

   2.   **Analysis**

The Rehabilitation Act[8] provides a cause of action for disabled employees whose employers fail to reasonably accommodate them. For a plaintiff to make a prima facie case for failure to accommodate in the context of reassignment to a vacant position, a plaintiff must establish: (1) he is a disabled person within the meaning of the Rehabilitation Act and has made any resulting limitations from his disability known to the employer; (2) the preferred option of accommodation within the plaintiff's existing job cannot reasonably be accomplished; (3) the plaintiff requested the employer reasonably accommodate his disability by reassignment to a vacant position, which the plaintiff may identify at the outset or which the plaintiff may request

---

[8] Courts apply standards from the ADA in analyzing claims under the Rehabilitation Act. *See, e.g.*, *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010); *Jarvis v. Potter*, 500 F.3d 1113, 1121 (10th Cir. 2007) ("We . . . look to the ADA for guidance in resolving Rehabilitation Act claims."); 29 U.S.C. § 791(f).

the employer identify through an interactive process in which the plaintiff in good faith was willing to, or did, cooperate; (4) the plaintiff was qualified, with or without reasonable accommodation, to perform one or more appropriate vacant jobs within the company that the plaintiff must, at the time of summary judgment, specifically identify and show were available within the company at or about the time the request for reassignment was made; and (5) the plaintiff suffered injury because the employer did not offer to reassign the plaintiff to any appropriate vacant position. *Iverson v. City of Shawnee, Kan.*, 332 F. App'x 501, 503 (10th Cir. 2009).

If the plaintiff establishes a prima facie case, the burden shifts to the employer to present evidence either rebutting one or more elements of the prima facie case or establishing an affirmative defense. *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017). And if the employer does either of these things, summary judgment is appropriate unless the plaintiff can produce evidence establishing a genuine dispute regarding the affirmative defenses or rehabilitates any of the challenged elements of his prima facie case.[9] *Id.*

Here, Defendant does not contest the first and second elements of Plaintiff's prima facie case. Doc. 37. Rather, Defendant argues Plaintiff cannot meet the remaining elements, defeating his claim. *Id.* For the following reasons, the Court agrees that Plaintiff cannot satisfy his burden of establishing a prima facie case. First, with respect to the third element, neither Plaintiff nor USPS identified a vacant position Plaintiff could perform with his medical restrictions. Mr. Daniels conducted a search in the local commuting area for vacant USPS positions within Plaintiff's medical restrictions. *Id.* at 7 ¶ 27. During that search, Mr. Daniels contacted managers at seven different postal facilities, but each manager informed him that no vacant positions were available

---

[9] The Court notes that failure to accommodate claims are not analyzed under the *McDonnell Douglas* framework. Rather, the Tenth Circuit has developed this modified burden-shifting framework under which courts are to assess such claims. *See Punt*, 862 F.3d at 1050.

with duties that Plaintiff could perform within his restrictions. *Id.* at 7 ¶ 28. Ultimately, in 2013 and 2014, Mr. Daniels could not find any available, vacant positions that Plaintiff could perform within his restrictions. *Id.* at 7 ¶ 29. And Plaintiff likewise did not identify any available, vacant position with essential duties he could perform given his restrictions. *Id.* at 7 ¶ 30. Mr. Daniels advised Plaintiff that he was unable to locate any vacant funded positions available within Plaintiff's restrictions and gave Plaintiff the option to be assigned to any vacant funded position nationwide. *Id.* at 8 ¶ 31. But Plaintiff never took the necessary steps to apply for such an assignment. *Id.* at 8 ¶ 32. Plaintiff has not established the third element of his prima facie case and no reasonable jury could find that he has established this element.

Second, Plaintiff cannot show he was "qualified," with or without reasonable accommodation, to perform a vacant job within USPS that was available at or about the time of his reassignment request, so as to satisfy the fourth element of his case. An individual is "qualified" when, with or without reasonable accommodation, they can perform the essential functions of the employment position they hold or desire. *See* 42 U.S.C. § 12111(8).[10] The Rehabilitation Act imposes a duty on federal employers to provide reasonable accommodations to qualified individuals with a disability. *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012). But this duty is not unlimited; qualified individuals are entitled only to a <u>reasonable</u> accommodation. *Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1177 (10th Cir. 1999).

Here, Plaintiff concedes that he could not perform the essential functions of the Computer Line Production Operator position. Doc. 37 at 3 ¶ 9. These functions included repeated and daily lifting, carrying, pushing, and climbing ladders. *Id.* at 3 ¶ 10. Plaintiff contends USPS could have modified the position by permitting him to put labels in a box when the boxes came down the

---

10  *See supra* note 8.

rollers—i.e., allowing him to alternate sitting and standing while performing his work. *Id.* at 4 ¶ 14. But no reasonable jury could find that this constitutes a "reasonable accommodation," as it would effectively vitiate essential functions of Plaintiff's job. The Tenth Circuit has held that "[a]n accommodation that eliminates the essential function of the job is not reasonable." *Smith v. Blue Cross Blue Shield of Kan., Inc.*, 102 F.3d 1075, 1076 (10th Cir. 1996).

And USPS was not required, as Plaintiff suggests, to create a new position for Plaintiff within his medical restrictions. Indeed, "it is not reasonable to require an employer to create a new job for the purpose of reassigning an employee to that job." *Midland Brake*, 180 F.3d at 1174; *see also White v. York Int'l Corp.*, 45 F.3d 357, 362 (10th Cir. 1995) (holding that the ADA "does not require an employer . . . [to] create a new position to accommodate the disabled worker"). Nor was USPS required to remove less senior employees from their jobs to accommodate Plaintiff. A position is not "vacant" if another employee currently holds that position. *See Duvall v. Ga.-Pac. Consumer Prods., L.P.*, 607 F.3d 1255, 1262 (10th Cir. 2010). Plaintiff's contention that he could perform a "janitor," "packer," or "forklift driver" position (Doc. 37 at 8 ¶ 36) likewise fails. The fourth element of Plaintiff's prima facie case requires that he show a vacant job within USPS <u>that was available</u> at or about the time the request for reassignment was made. There is no evidence these positions were vacant and available in 2013 and 2014, when Plaintiff was seeking reassignment. Again, at the time Plaintiff requested reassignment, he did not identify any available, vacant position with essential duties he could perform given his restrictions. *Id.* at 7 ¶ 30.

Finally, Plaintiff's request that he be permitted to perform the same work as his co-worker, Fred Green, is also an unreasonable accommodation. In 2013, Mr. Green was a Computer Line Production Operator at the NPC. *Id.* at 9 ¶ 39. According to Plaintiff, USPS permitted Mr. Green to sit in a chair for seven-and-a-half hours and watch the machine run. *Id.* at 9 ¶ 38. But this was

not a permanent assignment. *Id.* at 9 ¶ 39. Rather, Mr. Green was given a modified light duty assignment after suffering a work-related injury. *Id.* And, unlike Plaintiff, Mr. Green's medical restrictions were short term and he never informed Mr. Daniels that he could not perform the essential functions of his position; after a few months, Mr. Green returned to full duty work without modification. *Id.* As Defendant points out in her briefing, Mr. Green's short term, modified position was not a "vacant" position available to Plaintiff.

For the foregoing reasons, Plaintiff cannot establish his prima facie case for failure to accommodate under the Rehabilitation Act, and, therefore, his claim fails. Summary judgment is warranted on Plaintiff's failure-to-accommodate claim.

### III. CONCLUSION

THE COURT THEREFORE ORDERS that Defendant's Motion to Dismiss and for Summary Judgment (Doc. 36) is GRANTED.

IT IS SO ORDERED.

Dated: October 23, 2019 /s/ *Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE